**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT MAKARWICZ,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:10-cv-540-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

          **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the case is REMANDED** for additional proceedings.

## Procedural History

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income (SSI) in August 2006, alleging that he became disabled on June 15, 2000 (R. 104-06, 109-11, 118).  The claims were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 20-55).[1]  On January 22, 2009, the ALJ issued an unfavorable decision (R. 11-18).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 1-6).  This action for review of that decision timely followed (Doc. No. 1), and the

---

[1] At the administrative hearing, Plaintiff, through his non-attorney representative, amended his alleged onset date to August 1, 2006 (R. 24-26).  The ALJ, however, considered the applications with the original onset date of June 15, 2000 (R. 11).  As the Court finds reversal of the administrative decision is required on the merits, the Commissioner should clarify the correct claimed onset date on remand.

parties consented to the jurisdiction of the undersigned United States Magistrate Judge. The parties have briefed the issues and the matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to a back injury, with resulting pain and limitations (R. 122).

*Summary of Evidence Before the ALJ*

Plaintiff was 50 years old at the time the ALJ issued the hearing decision (R. 18, 104). He has an eleventh grade education (R. 45), with prior relevant work experience as a truck driver (R. 17, 123).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the opinions of a consultative examiner and those of non-examining state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as his testimony at the administrative hearing. No Vocational Expert testified.

By way of summary, the ALJ found that Plaintiff had the severe impairment of "back disorder (disc/degenerative)" (R. 13), and the record supports this uncontested finding. The ALJ determined that Plaintiff's impairment did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (R. 13-14), and determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) (R. 14). Specifically, the ALJ found that: The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand and walk for 6 hours in an eight-hour workday. Pushing and/or pulling were unlimited. He can

occasionally climb ladders, ropes, and scaffolds; stoop, crouch, and crawl. He should avoid concentrated exposure to extreme cold and heat; humidity and hazards (machinery/heights). *Id*.

The ALJ determined Plaintiff could not perform his past relevant work (R. 17) and applied Medical-Vocational Rule 202.18 to conclude that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform, considering his age, education, work experience and RFC, and he was therefore not disabled (R. 17-18).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d

at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises numerous issues in his challenge to the Commissioner's decision, contending that: 1) the ALJ erred in failing to utilize the testimony of a Vocational Expert ("VE"); 2) substantial evidence does not support the RFC finding of the ALJ as it is based on opinions of state agency physicians who did not review objective testing supporting Plaintiff's complaints; 3) the ALJ erred in failing to consider Plaintiff's uncontrolled hypertension a severe impairment; and 4) the ALJ erred in her evaluation of Plaintiff's pain and credibility. Although the Court does not agree with all of Plaintiff's contentions, error is apparent on the record, and remand is required.

### The Sequential Evaluation

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Court addresses the issues presented by the Plaintiff within the contextual framework of this evaluation, and not necessarily in the order briefed by the parties.

**The evaluation at step two of the sequential analysis**

Plaintiff contends that the ALJ erred in failing to determine at step two of the analysis whether Plaintiff suffered from a severe impairment resulting from his uncontrolled hypertension (R. 13).

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521.[2] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921. The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability. 20 C.F.R. § § 404.1523 and 416.923.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r of Social Security,* 265 F.3d 1214, 1219 (11th Cir.2001). A mere diagnosis, however, is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. An impairment is not severe

---

[2]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Rodriguez v. Astrue,* 2011 WL 486118, 3 (M.D. Fla. 2011) (internal citations omitted).

only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986).

Here, the ALJ detailed Plaintiff's diagnosis of hypertension in her decision (R. 15-16), but did not find it to be a severe impairment at step two. The omission is not fatal. The Plaintiff's burden at step two is light. However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Soc. Sec.*, No. 09-12426, 2010 WL 2331416, at *1 (11th Cir. June 11, 2010). Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with a severe impairment at step two and proceeded forward with the sequential evaluation. Thus, if Plaintiff's hypertension should have been included as severe at step two, the omission is only error if the ALJ subsequently failed to fully account for functional limitations arising from it.

Dr. Donald Tindall examined Plaintiff in October 2006 at the request of the Commissioner, noted Plaintiff's blood pressure was 171/101, and diagnosed untreated hypertension without known end-organ damage (R. 192). Dr. Tindall did not impose any work-related limitations related to Plaintiff's hypertension (R. 190-92). Plaintiff did receive treatment for high blood pressure at his treating provider – the Community Medical Care Center. On September 4, 2007, Plaintiff's blood pressure was 179/94 and he was diagnosed with hypertension (R. 237-38). On October 2, 2007, Plaintiff's blood pressure was 154/78 (R. 233). On April 17, 2008, Plaintiff's blood pressure was elevated, and he reported that he had not taken his blood pressure medication for a few days (R. 216).

-6-

On August 7, 2008, Plaintiff's blood pressure was 158/99 and the physician's assessment was hypertension "unchanged" (R. 242). The physician told Plaintiff to continue his therapy for blood pressure (R. 243). Plaintiff's physicians at Community Medical Care did not impose any functional limitations on Plaintiff as a result of his hypertension, and, indeed, Plaintiff did not claim hypertension as a disabling impairment in his applications, nor did he identify any limitations or effects of the hypertension in his testimony.[3] Plaintiff fails to point to any evidence that establishes that the impairment had more than a minimal effect on his ability to perform basic work activities. *See Moore v. Barnhart,* 405 F. 3d 1208, 1213 at fn.6 (11th Cir. 2005). No error is shown at this step.

### The evaluation at steps three and four

Plaintiff contends that the ALJ erred in her reliance on older state agency opinions from non-examining sources to support the RFC, and also erred in evaluating Plaintiff's credibility and his allegations of pain. As such, Plaintiff contends that the RFC is not supported by substantial evidence.

*Weighing the opinions*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See*

---

[3] Although Plaintiff cites *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) as authority for the proposition that hypertension without end organ damage can be a severe impairment, the claimant in *Parker* had significant symptoms of weakness, visual problems, drowsiness, and difficulties standing, all attributed to her uncontrolled hypertension and side effects of the medications taken for it. No such complaints are evident here.

*Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan.24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen, supra)*. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the

ultimate decision on the merits of the claim is rational and supported by substantial evidence.' " *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

Here, the medical evidence includes numerous treatment notes from Plaintiff's treating provider, noting Plaintiff's "chronic" back issues (R. 210-243). On September 18, 2007, Plaintiff presented with back and neck pain, "unable to sleep, lays with knees up in the air." (R. 235). On examination, his provider observed: "Ambulates slowly and carefully - stumbles;" "limited range of motion to back and sides;" "unable to bend forward"; weak right leg raise, "hurts in back;" and decreased reflexes in the right leg, with an inability to squat. *Id.* X-rays of the lumbar spine revealed lower lumbar spondylosis (R. 241). An MRI was performed on October 8, 2007 showing a "mild, posterior protrusion of the L5-S1 intervertebral disc, with moderate bilateral neural foraminal stenosis" and "impingement upon the exiting right L5 nerve root more laterally in the right L5-S1 neural foramina." (R. 240). His subsequent clinic visits show continued complaints of pain and limitations relating to his "herniated lumbar disc with nerve impingement" (R. 212, *see also* R. 231, 227, 219, 216, 210). On April 17, 2008, Plaintiff's provider at the clinic noted his "bilateral neural foraminal stenosis with impingement upon the exiting right L5 nerve root," and stated: "Patient is advised to see neurosurgeon but does not have insurance." (R. 216). Although the ALJ summarized these treatment notes in her decision (R. 16), she did not evaluate or weigh these findings, which appear to be inconsistent with her own RFC finding that Plaintiff is capable of the full range of light work, including the ability to occasionally stoop, crouch or crawl.[4] Under the standard set forth in *Winschel*, this is plain error.[5]

As noted In *Winschel*:

---

[4] Note that the treating provider found that Plaintiff was unable to bend forward and could do only ½ of a squat (R. 235).

[5] The Court notes that the parties did not brief the impact of *Winschel*, as Plaintiff's brief was filed before its issuance.

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).
>
> * * *
>
> The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a "medical opinion," but this argument ignores the language of the regulations. The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement [ ] from [a] physician ... that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

*Winschel,* 631 F.3d 1176, 1178-79.

Here, too, the treatment notes of the treating clinic providers include detailed descriptions of the Plaintiff's symptoms (back pain and postural limitations), a diagnosis (herniated disc with nerve impingement), and a judgment about the severity of his impairments (Plaintiff needed to see a neurosurgeon, but could not afford to as he had no insurance). The failure to set forth the weight given these findings warrants remand.

Plaintiff also objects to the weight given the opinions of non-examining state agency physicians. In formulating her conclusions about the residual functional capacity, the ALJ stated:

> The State agency medical consultant opined at the initial and reconsideration levels of adjudication that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand and walk for 6 hours in an eight-hour workday. Pushing and/or pulling were unlimited. He can occasionally stoop, kneel, crouch and crawl. He should avoid concentrated exposure to extreme cold and heat; humidity and hazards (machinery/heights). (Exhibits 3F and 5F). The undersigned assigned great weight to these opinions in view of the medical evidence as a whole (SSR 96-6p).

(R. 17). Plaintiff points out that these opinions were issued in December 2006 and February 2007, *prior* to the objective X-rays and MRI testing in the fall of 2007, which revealed the herniated disc with impingement (R. 194-209). Plaintiff argues that "the opinion of a non-examining reviewing

physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision," (*citing Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990), and "opinions . . . based on woefully incomplete evidence . . . should not be accorded a great amount of weight." *Shinn ex. rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1287 (11th Cir. 2004). While the ALJ did not rely *solely* on the state agency opinions, the ALJ's decision to credit the older evaluations of non-examining consultants without adequately evaluating the more recent testing and findings of the treating provider requires reversal.[6] On remand, the Commissioner must weigh *all* of the opinion evidence, and state with particularity the reasons given therefor.

This is not the only error the Court finds at steps three and four. Plaintiff contends that the ALJ failed to properly evaluate his complaints of pain and limitations.

When a claimant attempts to establish disability through his or her own testimony of subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). "If proof of a disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote, supra*, 67 F.3d at 1562 (quotation omitted). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires

---

[6]The Court, of course, implies no opinion as to the weight that should be given to the evidence on remand. It is not the task of the Court to weigh the evidence in the first instance.

that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause some degree of pain and other symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible (R. 15-17).

As noted by the Commissioner in his brief:

> Plaintiff testified that his back problems cause pain in his neck, lower back, and right leg (Tr. 27). Plaintiff stated the he gets leg pain ten to fifteen times per month, depending on how long he sits (Tr. 28). Plaintiff testified that he drove thirty miles to the hearing and was in pain for the entire trip (Tr. 28-29). Plaintiff rated his pain level at eight out of ten and stated that his pain causes him to lose balance (Tr. 29). Plaintiff also testified that he could lift no more than a gallon of milk, only stand or sit for a half hour at a time without experiencing pain, and only walk one block before stopping due to pain (Tr. 29-32).

(Doc. No. 20 at 10).

The ALJ found these allegations to be "partially credible," noting that Plaintiff "appeared capable of activities within the parameters of the above residual functional capacity assessment based on the available medical evidence of record," but the only medical evidence cited for this proposition was a consultative examination which occurred a year prior to the MRI findings (R. 16).[7] The ALJ then detailed Plaintiff's January 2007 report of activities of daily living (R. 17), in which "the claimant indicated that he took care of 2 dogs and gave them food and water and let them out. He reported taking care of his personal care, but it took time. He indicated that he fixed light and quick meals in a microwave. He picked up around the house. He used a grabber to pick up in the yard. His sister did most of the chores. He drove a car and walked. He drove to the store 2 to 3 times a week.

---

[7]The ALJ summarized the consultative exam thus: "At the consultative examination of October 31, 2006, his blood pressure was 1711101. He was 6 feet 3 inches tall and weighed 275 pounds. His gait was normal. He had difficulty getting on and off the examination table. Grip strength was 5/5 bilaterally. Strength throughout the right and left upper extremity was 5/5. Xrays of the lumbar spine revealed severe disk space narrowing at L5-Sl; moderately severe disk space narrowing at L4-S; moderate disk space narrowing at L3-4; lateral osteophytosis at L3-4; lateral osteophytosis at L3-4; osteophytosis of the superior cord inferior anterior margins of L5; and facet arthropathy at L3, L4 and L5 (Exhibit 2F)." (R. 16).

He shopped in the stores when he needed groceries. He shopped 2 to 3 times a week. He was able to pay bills, count change, use a savings account and use a checkbook. He watched television and he spent time with others" (R. 17, 137-140). Finding Plaintiff's treatment has been "conservative and non-aggressive prior to the date last insured," the ALJ determined that despite the objectively determined medical condition, the condition "is not of such severity to expect the level of pain that the claimant alleges." (R. 17).

Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." *Carter v. Commissioner of Social Sec.,* 2011 WL 292255, 2 (11th Cir. 2011) (unpublished), *citing Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).  Here, the reasons given for discrediting the testimony as to pain and limitations are that the allegations are 1) inconsistent with the consultative examination; 2) apparently inconsistent with daily functioning activities; and 3) the only treatment prior to the date last insured – which was June 30, 2001 for the Disability Insurance Benefits claim– was conservative and non-aggressive.  Because these findings are either inadequate or incomplete, the Court cannot find that they are supported by substantial evidence.

As noted above, the ALJ did not evaluate or weigh the findings of the treating providers. Absent a full evaluation of the treating records, the Court cannot determine whether a finding that Plaintiff could sustain work within the parameters of the RFC is, in fact, supported by substantial "available medical evidence of record."  This is especially so as the treating records are more recent than the consultative examination, and reflect objective test results that were not before the consultative examiner.  For similar reasons, the function report of January 2007 cannot, without more, serve to vitiate the September 2008 testimony of pain and limitation.  There is no dispute that Plaintiff's condition worsened, as shown by the later records, over this period of time.  Nor can the

-13-

credibility finding be supported by the existence of conservative and non-aggressive treatment in 2001.  The record contains uncontradicted evidence that more aggressive treatment (referral to a neurosurgeon) was recommended as Plaintiff's condition worsened, but Plaintiff could not afford it due to a lack of insurance (R. 33, 216). *See Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (poverty excuses noncompliance with prescribed treatment).  The findings as to pain and credibility cannot be sustained on this record.

### The evaluation at step five

The final issue raised by Plaintiff goes to the propriety of determining this matter without the use of Vocational Expert testimony.  As noted above, once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "Grids"].  *Foote*, 67 F.3d at 1558.  Exclusive reliance on the "Grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the Grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational

expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Here, the ALJ did not use a Vocational Expert despite finding that Plaintiff's chronic pain allegations (non-exertional) were partially credible. Instead, the ALJ determined that Plaintiff could perform the full range of light work, and thus relied solely on the Grids to find Plaintiff to be not disabled (R. 18). This Court has already concluded, however, that the RFC is not supported by substantial evidence. As such, the decision not to use a Vocational Expert is also not supported by substantial evidence. The Commissioner should revisit on remand whether the existence of non-exertional impairments warrant the use of a VE in this case.

## Conclusion

As the administrative decision was not made in accordance with proper legal standards and is not supported by substantial evidence, it is **REVERSED and the matter is REMANDED** under sentence four of 42 U.S.C. § 405(g), with instructions to determine the appropriate time period at issue, consider and explain the weight given to each of the medical opinions, retain a Vocational Expert, if appropriate, and to conduct any additional proceedings deemed warranted. **The Clerk is directed to enter judgment accordingly, and close the file.**

**DONE** and **ORDERED** in Orlando, Florida on June 30, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

Case 6:10-cv-00540-DAB   Document 24   Filed 06/30/11   Page 16 of 16 PageID 359

Copies furnished to:

Counsel of Record